UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

YULONDA THOMPSON                    DOCKET NO. 6:10-cv-1203

VERSUS                              JUDGE DOHERTY

MICHAEL J. ASTRUE,                  MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL
SECURITY

## REPORT  AND  RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED and this

matter DISMISSED WITH PREJUDICE.

## BACKGROUND AND THE COMMISSIONER'S FINDINGS

On March 17, 2008, Ms. Thompson filed an application for Supplemental

Security Income benefits under Title XVI of the Social Security Act.[1]  She was born

on August 26, 1977,[2] is currently 34 years of age, and has a tenth grade education.[3]

---

[1]     Rec. Doc. 8-6 at 7.  The protective filing date is January 25, 2008.  Rec. Doc. 8-7 at 2.

[2]     Rec. Doc. 8-6 at 7.

[3]     Rec. Doc. 8-3 at 24.

Her application for benefits alleges a disability onset date of July 1, 1985.[4]  In a disability report that appears to be contemporaneous with her application, she identified the illness, injury, or condition that limits her ability to work as learning disabled, diabetes, asthma, anxiety, depression, and bipolar disorder.[5]  She indicated that her bipolar disorder causes violent mood swings resulting in anger outbursts, that her diabetes causes chronic swelling in her feet, and that her chronic asthma attacks make physical exertion difficult.[6]

Ms. Thompson has worked as a babysitter, a jar labeler in a canning factory, and an inspector in a sweet potato factory,[7] but the record is unclear regarding when she last worked.  Although she stated in her application for benefits that she became unable to work because of her disabling conditions on July 1, 1985, she also stated that she stopped working on December 31, 2004 when she was dismissed from her last position due to an anger outburst.[8]  She testified at the hearing that she last

---

[4]     Rec. Doc. 8-6 at 7.

[5]     Rec. Doc. 8-7 at 7.

[6]     Rec. Doc. 8-7 at 7.

[7]     Rec. Doc. 8-7 at 13.

[8]     Rec. Doc. 8-7 at 7.

worked in 2004[9] but told the examining psychologist that she last worked in September 2007.[10]

A further inconsistency is that although her application indicates that she was not disabled prior to age 22,[11] she was only 8 years old on the alleged disability onset date. The record contains no documentation of any testing or diagnosis correlated to the alleged onset date. One of the illnesses she lists as a disabling condition is adult onset diabetes. She told a consulting physician that she was diagnosed with that illness in 2007, which also does not correlate to the alleged disability onset date.

The medical records contained in the record document that Ms. Thompson is obese and has been diagnosed with and treated for diabetes and asthma.[12] There are passing references to depression[13] and a bipolar condition[14] in her medical records, but there are no records from any mental health professional documenting that Ms. Thompson has actually been diagnosed with or treated for those conditions. Although Ms. Thompson contends that her vision is very poor, an eye examination

---

[9]      Rec. Doc. 8-3 at 25.

[10]     Rec. Doc. 8-3 at 24.

[11]     Rec. Doc. 8-6 at 7.

[12]     Rec. Doc. 8-8 at 6-32.

[13]     Rec. Doc. 8-8 at 28, 30.

[14]     Rec. Doc. 8-8 at 8.

by ophthalmologist Dr. Robert Casanova, conducted on July 1, 2008, was normal. Although she is myopic and needs glasses, Dr. Casanova stated that her vision can be corrected to 20/20.[15]

On April 23, 2008, Ms. Thompson was examined by Dr. Kenneth A. Ritter, Jr., an internist, at the request of Disability Determination Services.  In his report,[16] Dr. Ritter found that Ms. Thompson is 6' 1" tall and weighs in excess of 350 lbs.  She is single and has three children,[17] smokes three packs of cigarettes per day, was diagnosed with hypertension in 2006, and with diabetes in 2007.  Dr. Ritter's impressions were morbid obesity, adult onset diabetes "under fairly good control at the present time," chronic cigarette lung disease with an asthmatic component, a history of being diagnosed with bipolar mental problems for which she is taking multiple medications, and hypertension with a normal blood pressure during the examination.  In his report, Dr. Ritter noted that Ms. Thompson's visual acuity after correction with glasses was 20/200.[18]  In light of the results of the testing conducted by Dr. Casanova, however, the note on Dr. Ritter's report might be a typographical

---

[15]        Rec. Doc. 8-8 at 83.

[16]        Rec. Doc. 8-8 at 43-45.

[17]        The psychologist who examined Ms. Thompson the next day reported that she had two children.  Rec. Doc. 8-8 at 50.  At the time of the hearing approximately one year after these examinations, she was pregnant.  Rec. Doc. 8-3 at 24.

[18]        Rec. Doc. 8-8 at 44.

error.   Deference with regard to the alleged vision problem is made to the ophthalmologist.  Therefore, Dr. Casanova's opinion will be credited over Dr. Ritter's on that particular subject.

Dr. Ritter also assessed Ms. Thompson's physical ability to do work-related activities[19] and found that her "morbid obesity and ongoing very heavy cigarette smoking limit her" as noted in the assessment.  He found that her ability to lift and carry and her ability to stand and walk are affected by her impairment, but he also found that sitting is not affected by her impairments.  He also found that she can only occasionally climb, stoop, kneel, crouch, and crawl.  He noted no other restrictions.

On April 24, 2008, Ms. Thompson was examined by Dr. David E. Greenway, a clinical psychologist.[20] Dr. Greenway interviewed Ms. Thompson and administered the Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III").  Although he believes that Ms. Thompson's effort in the testing was "spotty," he also believes that the test results are "a moderately reliable and valid estimate of her current functional status" and that the "test results underestimate her true IQ which is probably in the borderline range."  Her Verbal IQ score was 65, Performance IQ score was 73, and Full Scale IQ was 65.  Dr. Greenway explained that her full scale score falls in the

---

[19]     Rec. Doc. 8-8 at 46-47.

[20]     A copy of his report is found in the record at Rec. Doc. 8-8 at 50.

mildly mentally retarded range of intellectual functioning.   Ms. Thompson

complained to Dr. Greenway of mood swings and difficulties getting along with

people but he found no indication of psychotic symptoms.  Dr. Greenway diagnosed

Ms. Thompson as having a Cluster B Personality Style.  According to the Merck

Manual Home Health Handbook, "[p]ersonality disorders are pattens of perceiving,

reacting, and relating to other people and events that are relatively inflexible and that

impair a person's ability to function socially."[21]   Cluster B personality disorders

involve dramatic or erratic behavior.[22]  Dr. Greenway also diagnosed Ms. Thompson

as having borderline intellectual functioning, being morbidly obese, and having

psychosocial problems.  He noted, however, that she shops for groceries, cooks

family meals, cares for her children, and keeps the house clean.  She attends church

and Bible study weekly, visits with neighbors occasionally, and is capable of

managing her own personal financial affairs.

A record from the Iberia Parish School System[23] indicates that Ms. Thompson

was evaluated on December 28, 1983 and found to have an exceptionality designated

---

[21]    The Merck Manual Home Health Handbook,
http://www.merckmanuals.com/home/mental_health_disorders/personality_disorders.html   (last
visited November 8, 2011).

[22]    *Id*.

[23]    Rec. Doc. 8-7 at 54.

as "Sp. Imp."   This might be interpreted as speech impairment; however, that interpretation is purely speculative.   The same record also indicates that Ms. Thompson was evaluated on January 5, 1987 and found to have an exceptionality designated as "Mod. Ment. Hand."   This might be interpreted as  "moderately mentally handicapped."  Again, however, such an interpretation is purely speculative. Without more information, including but not limited to the evaluative testing that resulted in Ms. Thompson having been identified as having these two exceptionalities, the significance of the exceptionalities cannot be evaluated. Unfortunately, the same school system form indicates that Ms. Thompson's records were destroyed on August 2, 2005.

On July 1, 2008, it was determined that Ms. Thompson is not disabled.[24]  She requested a hearing,[25] which was held on May 13, 2009 before Administrative Law Judge Kathleen Molinar.[26]   Ms. Thompson appeared at the hearing without an attorney or other representative to assist her.

---

[24]     Rec. Doc. 8-4 at 2.

[25]     Rec. Doc. 8-5 at 7.

[26]     The hearing transcript is in the record at Rec. Doc. 8-3 at 20-37.

At the hearing, Ms. Thompson testified that her disabling problems are diabetes, obesity, asthma, depression, and bipolar.[27]  She stated that she had reduced her smoking to one cigarette per day and was seeing a dietician for her diabetes.[28]  At the time of the hearing, she was pregnant and was seeing a doctor at University Medical Center for prenatal care.[29]  But she was not treating with any other doctors for any of her other medical conditions.[30]  She had been prescribed two medications for diabetes as well as benadryl to help her sleep, prenatal vitamins, and an antibiotic for a bladder infection.  Ms. Thompson denied that she was taking those medications, except for the ones for diabetes, stating that the prescriptions were still in her purse because she could not afford to purchase the medication.[31]  At that time, she was not seeing a psychologist or counselor for her mental health problems.[32]

---

[27]    Rec. Doc. 8-3 at 25-26.

[28]    Rec. Doc. 8-3 at 26-27.

[29]    Rec. Doc. 8-3 at 27.

[30]    Rec. Doc. 8-3 at 29.

[31]    Rec. Doc. 8-3 at 29-30.

[32]    Rec. Doc. 8-3 at 31.

A physician and a vocational expert also testified at the hearing.  The physician opined that Ms. Thompson's main problem is her obesity, and that her activities are restricted because of her obesity.[33]  The vocational expert opined that there are sedentary jobs in the national economy that Ms. Thompson could perform.[34]

Following the hearing, the ALJ issued an unfavorable decision on July 28, 2009.[35]  Ms. Thompson then requested review of the ALJ's decision on August 31, 2009.[36]  The Appeals Council denied her request on May 27, 2010.[37]  Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[38]

Ms. Thompson now seeks judicial review of the Commissioner's decision, arguing that she has been disabled since July 1, 1985 because she is mentally retarded.

---

[33]     Rec. Doc. 89-3 at 33.

[34]     Rec. Doc. 8-3 at 35-36.

[35]     A copy of the ALJ's decision is found in the record at Rec. Doc. 8-3 at 12-19.

[36]     Rec. Doc. 8-3 at 5.

[37]     Rec. Doc. 8-3 at 2.

[38]     42 U.S.C. § 405(g).

## ASSIGNMENT OF ERRORS

Ms. Thompson claims that the evidence does not support the ALJ's conclusion that she is not disabled.  She argues that the ALJ should have found that she is disabled due to mental retardation.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[39]  If the Commissioner's findings are supported by substantial evidence and the decision comports with relevant law, the decision must be affirmed.[40]  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.[41]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[42]  Finding substantial evidence does not

---

[39]     42 U.S.C. § 405(g); *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001);

[40]     *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[41]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[42]     *Boyd v. Apfel,* 239 F.3d at 704.

involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[43] In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[44]

## DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[45] Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[46] Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[47]

---

[43]     *Singletary v. Bowen*, 798 F.2d at 823.

[44]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[45]     *Alfred v. Barnhart*, 181 Fed. App'x at 450; *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[46]     42 U.S.C. § 423(d)(1)(A).

[47]     20 C.F.R. § 404.1572(a)-(b).

-11-

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.    An individual who does not have a "severe impairment" will not be found to be disabled.

3.    An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.    If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.    If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.[48]

---

[48]    *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[49] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[50]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[51]

The claimant bears the burden of proof on the first four steps.[52]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[53]  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.[54]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[49]     20 C.F.R. § 404.1520(a)(4).

[50]     20 C.F.R. § 404.1545(a)(1).

[51]     20 C.F.R. § 404.1520(e).

[52]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[53]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[54]     *Fraga v. Bowen*, 810 F.2d at 1304.

-13-

rebut this finding.[55]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[56]

In this case, the Commissioner found, at step one, that Ms. Thompson has not engaged in substantial gainful activity since January 25, 2008, the protective application date.[57]  This finding is supported by the evidence in the record.

At step two, the Commissioner found that Ms. Thompson has the following severe impairments:  diabetes, hypertension, obesity, and borderline intellectual functioning.  This is also supported by the evidence in the record.

At step three of the required analysis, the ALJ found that Ms. Thompson does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  Ms. Thompson contends, however, that the ALJ erred by failing to find that she is mentally retarded.

---

[55]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[56]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[57]     Rec. Doc. 8-3 at 14.

Listings criteria are demanding and stringent,[58] and the burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a Step Three impairment determination.[59]  When a claimant fails to sustain that burden, a reviewing court must conclude that substantial evidence supports the ALJ's finding that listings-level impairments are not present.[60]

If an impairment does not meet a listing, it may, nevertheless, entitle the claimant to a finding that he is disabled if his impairment or combination of impairments is medically equivalent in severity to the listing.  If the claimant argues for medical equivalency, the standard is similarly demanding, and the claimant may not establish listings-level severity through subjective testimony.   Rather, the claimant must point to objective medical findings that support each of the criteria for the equivalent impairment determination.[61]

In this case, Ms. Thompson has not satisfied her burden.  She contends that she satisfies Listing 12.05(C), one of the listings for mental retardation.  Listing 12.05 defines mental retardation as "significantly subaverage general intellectual

---

[58]     *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

[59]     *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria"); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

[60]     *Selders v. Sullivan*, 914 F.2d at 619-20.

[61]     *Selders v. Sullivan*, 914 F.2d at 619.

-15-

functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., . . . onset of the impairment before age 22."[62]  Thus, there are three criteria that must be initially satisfied in order for a claimant to meet this listing:  (1) subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) onset before age 22.[63]  Once those three criteria of the diagnostic description are satisfied, the claimant must also demonstrate that the severity of his or her mental retardation meets one of the four subparagraphs of Listing 12.05.  In this case, Ms. Thompson contends that, with regard to severity, she satisfies Subparagraph C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."[64]

Dr. Greenway's testing of Ms. Thompson revealed that her Verbal IQ is 65, her Performance IQ is 73, and her Full Scale IQ is 65.  This seems to satisfy the severity criteria of Subparagraph C, but that puts the cart before the horse.  The severity of a claimant's mental retardation cannot be evaluated until it has first been determined that she is, in fact, mentally retarded by finding that she meets the criteria of the

---

[62]     20 C.F.R. Pt. 404, Subpt. P, App. 1, Subpt. 12.05.

[63]     See *Randall v. Astrue*, 570 F.3d 651 (5th Cir. 2009).

[64]     20 C.F.R. Pt. 404, Subpt. P, App. 1, Subpt. 12.05(C).

diagnostic paragraph of Listing 12.05.  In this case, Ms. Thompson does not meet the criteria of the diagnostic paragraph for two reasons.

First, the record contains no evidence that Ms. Thompson's alleged mental retardation manifested prior to the age of 22.  The only document in the record having to do with the time period prior to Ms. Thompson's reaching the age of 22 is the school system record from Iberia Parish.[65]  This document notes that Ms. Thompson was identified as having two exceptionalities, but the exceptionalities are abbreviated in a way that prevents certainty as to what the exceptionalities actually are.  Furthermore, there is no medical or professional information and no testing or evaluative materials to back up Ms. Thompson's having been identified as having the exceptionalities.  The record contains no school records showing that Ms. Thompson was in special education classes as a child or any evidence that she quit school because of any deficits in adaptive functioning.  Ms. Thompson told Dr. Greenway that she dropped out of tenth grade because she was pregnant.[66]  In sum, the one sheet of paper from the Iberia Parish school system cannot be relied upon as establishing that Ms. Thompson had significantly subaverage general intellectual functioning and deficits in adaptive functioning before the age of 22.

---

[65]     Rec. Doc. 8-7 at 54.

[66]     Rec. Doc. 8-8 at 50.

-17-

Second, even if one were to assume that Ms. Thompson could establish that her general intellectual functioning is significantly subaverage, which is not borne out by the psychological testing administered by Dr. Greenway in 2008, the record does not support the conclusion that she also has deficits in adaptive functioning.  The regulations provide several examples of adaptive activities such as "cleaning, shopping, taking public transportation, paying bills, maintaining a residence, caring appropriately for one's grooming and hygiene, using telephones and directories, and using a post office."[67] Dr. Greenway found that Ms. Thompson socializes adequately, takes care of her children and her home, does the grocery shopping, prepares meals, and keeps the house clean.  She attends church and occasionally visits with others.  Although the ALJ did not evaluate whether Ms. Thompson meets the listing for mental retardation, she found that Ms. Thompson has only mild restrictions in activities of daily living and moderate difficulties in social functioning.  These conclusions are supported by the record.  Ms. Thompson has not established that she has deficits in adaptive functioning sufficient to support her claim that she is mentally retarded.

---

[67]     20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.00(C)(1).

Ms. Thompson did not carry the burden of establishing that she is mentally retarded.  Accordingly, there is no basis for concluding that the Commissioner's finding at step three is erroneous.

Before going from step three to step four, the Commissioner found that Ms. Thompson retains the residual functional capacity to perform simple sedentary work with certain restrictions – no climbing, crouching, crawling, bending or kneeling, no dealing with the public, limited interaction with co-workers, in a climate- controlled environment.[68]  This assessment was based on Ms. Thompson's alleged symptoms and the extent to which her symptoms are consistent with the objective medical evidence and other evidence in the record.  Aside from Ms. Thompson's hearing testimony as to what she can and cannot do, Ms. Thompson has offered no evidence to support a conclusion that her actual residual functional capacity is anything other than that found by the Commissioner.

The ALJ followed the appropriate two-step process[69] in first determining that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Ms. Thompson's symptoms and then evaluating the intensity, persistence, and limiting effects of her symptoms to

---

[68]     Rec. Doc. 8-3 at 15.

[69]     See, e.g., *Salgado v. Astrue*, 271 Fed. App'x 456, 458 (5th Cir. 2008).

-19-

determine the extent to which her impairments limit her ability to do basic work activities.  Following this procedure, the ALJ found that Ms. Thompson's statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment.  The ALJ found that if Ms. Thompson's symptoms were as severe and disabling as she alleged, she would have sought regular medical care, but the record is clear that she is not always compliant with the treatment prescribed and has not consistently sought medical care.  In particular, Ms. Thompson claimed that she suffers with depression, anxiety, and a bipolar condition but, at the time of the hearing, she was not treating with any mental health professional.  She also testified that she does not always fill her prescriptions.  The medical records in the record also document non-compliance with prescribed medication.[70]  Accordingly, the ALJ's finding is supported by the evidence in the record.

Both the applicable regulations and the jurisprudence require objective medical evidence to corroborate, at least in part, a claimant's subjective complaints.[71] "[S]ubjective symptoms alone, absent some indication that they are supported by

---

[70]     Rec. Doc. 8-8 at 14.

[71]     *Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir. 1991); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 416.912(b).

-20-

objective medical evidence, fail to support a disability finding."[72]  When a claimant does not provide sufficient evidence, the ALJ must make a decision based on the available evidence.[73]  Furthermore, the lack of evidence of restrictions imposed by a physician upon a claimant's activities can be interpreted only in favor of a finding of not disabled.[74]  The paucity of medical evidence presented in this case undermines Ms. Thompson's subjective claims, particularly with regard to her mental health complaints.  The ALJ found that the evidence does not support Ms. Thompson's testimony at the hearing, in which she alleged that she has many limitations.  That conclusion is supported by the evidence in the record, and the ALJ did not err in finding that Ms. Thompson's contrary testimony lacks credibility.

At step four, the ALJ found that Ms. Thompson is unable to perform past relevant work.  In the past, Ms. Thompson worked as a babysitter, jar labeler, and sweet potato inspector.  These jobs required her to lift up to medium weight and stand for prolonged periods of time.  The vocational expert identified these jobs as involving light to medium semi-skilled work, and she opined that Ms. Thompson can

---

[72]     *Salgado v. Astrue*, 271 Fed. App'x at 460, citing SSR 96-7p and 20 C.F.R. § 404.1529.

[73]     *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).

[74]     See, e.g., *Hollis v. Bowen*, 837 F.2d at 1387.

no longer perform those jobs.[75]  Based on the residual functional capacity found by the ALJ, the vocational expert testified that Ms. Thompson is no longer capable of performing that work.[76]  Therefore, the ALJ's finding is supported by the evidence in the record.

At step five, again based upon the testimony of the vocational expert, the ALJ found that there are jobs that exist in the national economy that Ms. Thompson can perform.[77]  Therefore, the ALJ found that Ms. Thompson is not disabled.  This finding is supported by substantial evidence in the record, in the form of the residual functional capacity evaluation discussed above and in the form of the testimony of the vocational expert at the hearing.  At this point, the burden shifts to the claimant, Ms. Thompson, to prove that her impairments prevent her from working as a sedentary level information clerk.  The Fifth Circuit has held that a "medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."[78]  Ms. Thompson told Dr. Greenway that "If I could keep the meds

---

[75]     Rec. Doc. 8-3 at 34-35.

[76]     Rec. Doc. 8-3 at 35.

[77]     Rec. Doc. 8-3 at 35-36.

[78]     *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).  See also *Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980) (conditions controlled or controllable by treatment are not disabling).

together for the bipolar I could do something,"[79] implying that if her bipolar condition were controlled with medication, she would be able to work.  But, at the time of the hearing, she was neither taking prescribed medications for that condition nor treating with a mental health professional.  She must bear the burden of proving that, despite taking the prescribed medications and seeking medical care for her alleged conditions, she remains unable to work.  This she has not done.

This court has no basis on which to disagree with the ALJ's conclusions.  In this case, the ALJ evaluated Ms. Thompson's claim under appropriate legal standards, and the ALJ's conclusions are sufficiently supported by evidence in the record.  Ms. Thompson simply did not prove that she is disabled.

The undersigned finds that the Commissioner followed and applied the analysis prescribed by the Social Security regulations for determining whether Ms. Thompson is disabled.  Accordingly, the Commissioner's decision comports with the relevant legal standards.  The undersigned further finds that the Commissioner's decision is supported by substantial evidence.  The determination of a disability is a legal conclusion within the Commissioner's scope of authority.[80]   In this case, the Commissioner did not err in finding that Ms. Thompson is not disabled.

---

[79]     Rec. Doc. 8-8 at 51.

[80]     *Frank v. Barnhard*, 326 F.3d 618, 620 (5th Cir. 2003).

## CONCLUSION AND RECOMMENDATION

The undersigned fully reviewed the entire record on this matter, finds that the Commissioner did not err as a matter of law in reaching the final decision in this matter, finds that the Commissioner applied the proper legal standards in reaching the decision, and finds that the decision was supported by substantial evidence. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

-24-

of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415

(5th Cir. 1996).

Signed in Lafayette, Louisiana, this 18th day of November 2011.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)